HARVEY S. GOLDBERG, Petitioner-Appellee, *v.* BEVERLY C. GOLDBERG, Respondent-Appellant.

First District (5th Division)   No. 79-930

Opinion filed May 30, 1980.

Fischel & Kahn, of Chicago (Dan Brusslan and David W. Inlander, of counsel), for appellant.

Howard Arvey, Gary David Friedman, and Rosemarie J. Guadnolo, all of Chicago (Arvey, Hodes, Costello & Burman, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Respondent appeals from a post-decree order which reduced an original award of maintenance and contends that the trial court abused its discretion in ordering the reduction and improperly based its decision on petitioner's pro forma tax returns. Petitioner cross-appeals, contending that maintenance should have terminated.

The parties were divorced in January of 1964, and, pursuant to an agreement, the decree provided that respondent would have custody of the parties' two minor children; that petitioner would transfer $60,400 to respondent in return for a quitclaim deed conveying her interest in their residence; that respondent would take possession of nearly all of the household furniture; that petitioner would pay maintenance of $833.33 per month, or $10,000 per year; and that $208.33 per month in child support for each of the two children would be paid respondent.

Petitioner had complied with the decree in all respects when, in January of 1977, he filed a petition to modify it. An amended petition filed in August of 1978 alleged a change in circumstances in that respondent, who was not working at the time of the divorce, had since been employed and was capable of employment; that the children were married and independent; that respondent lived alone in a resort community; and that while petitioner's annual gross income at the time of the divorce was

$35,000 and is now $50,000, his net income is in fact less because of inflation and because he can no longer claim the children as exemptions.

At the hearing on the petition, petitioner testified that respondent was not employed at the time of the divorce but since then has been employed from time to time; that she now resides in Carmel, California; that at the time of the divorce, his salary was $35,000 and is now $50,000; that pursuant to the decree, he claimed the two children as exemptions for income tax purposes; and that they are now independent and no longer claimed as exemptions. When asked how much interest income he received in 1977, petitioner stated that he did not recall but that his memory would be refreshed if he could review a pro forma income tax return for that year which his accountant had prepared two or three days earlier. Although petitioner had actually filed a joint return with his present wife in 1977, the pro forma return was prepared to reflect his income and tax as if he had filed separately as a married person. After reviewing the document, he testified that his interest income in 1977 was $2,431; that he received $2,365 in dividend income; that he had a $2,000 capital loss; that he paid $10,177 in alimony; that he took $9,780 in deductions; that his adjusted gross income was $42,619; and that he paid $11,374 in Federal income taxes. When petitioner's counsel then attempted to admit the pro forma returns into evidence, respondent objected, and the court stated: "I am not admitting that document into evidence," and "As a document, I will sustain the objection, but to verify as to what the testimony, the witness' testimony is, verification of the figures he is looking at, and repeating it. For that limited purpose, it is admissible, but for no other purpose."

On cross-examination, petitioner testified that he and his present wife keep their respective incomes and expenses separate; that they presently reside in a three-bedroom, 2½-bath condominium on North Lake Shore Drive, which they hold in joint tenancy; that the condominium is mortgaged in the amount of $66,000 and that he makes all payments thereon; that he and his present wife own 10 acres of land in Colorado as joint tenants, and that his wife built a house there; that he goes to Colorado approximately six times per year; that at the time of the divorce, he was vice-president of his father's engineering firm; and that he is now president and owner of 54% of the firm's stock. On redirect, he stated that the purchase price of the condominium was $90,000 and the cost of the Colorado property was $150,000.

Anne Kubbe, a real estate broker testifying as a witness for petitioner, said that the value of a three-bedroom, 2½-bath condominium in petitioner's neighborhood ranged from between $175,000 and $180,000.

Respondent, testifying apparently under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), stated that she presently

lives in a condominium in Monterey County, California, which is 1½ miles from Carmel—the nearest town; that she has lived there since 1973; that she purchased the condominium for $44,135 and made a $9,000 down payment thereon, which she borrowed from her mother; that she obtained an Illinois associate real estate license in 1964, which has expired; that in 1972 she worked for Armond King Company, in Skokie, on a real estate research project; that in the fall of that year, she worked for a few weeks for Pace Promotions, answering telephones; that she did not work in 1973, when she moved to California, and did not attempt to obtain a California real estate license; that in 1974, she worked for two months as a "scout," searching for businesses to locate in a shopping plaza and that she was paid $125 per week; that from August to December of 1975, she was employed as a clerk in an antique clothing store and earned $250 to $300 per month; that she worked at the same store from March through December of 1976; that she was employed from November of 1977 to February of 1978 by Monterey Bay Publishing Company and earned $100 per week; and that she applied unsuccessfully for jobs at over 50 places since 1976. Concerning her health problems, she said that she was hospitalized in 1972—apparently due to hypoglycemia; that in 1976, she discovered she had a heart problem known as a first degree block—which is not handicapping; that she was hospitalized for four days in May of 1978 for trembling; that in June of that year, she had a second case of Bell's Palsy (facial paralysis) which lasted three weeks, as well as an esophagus problem; and that because of her illness she has imposed restrictions on herself concerning the type of employment she will accept; namely, that she must be within three miles of home and near a place where she can obtain food, because she must eat every two hours.

Respondent, then testifying in her own behalf, stated that in 1976 she earned between $3,200 and $3,500 (excluding alimony received); that in 1977, she earned $600; that in 1978, she earned $700; that there are two mortgages on her condominium on which she makes monthly payments of $290.52 and $66.01; that her other monthly expenses are $60 for the condominium assessment (which is several months past due), $39 for utilities, $25 for telephone, $15 to $20 for medical prescriptions, $350 to $375 for groceries, $40 for clothes, and $40 to $45 for laundry and cleaning; that her car insurance payments are $58.42 quarterly, and her home insurance is $145 per year; that she has $375 in a checking account and has no savings account; that she owes $2,500 in other debts, as well as $8,000 to her mother for the down payment on her condominium.

After the close of respondent's case, a motion of petitioner again to admit the pro forma tax returns was denied.

The trial court made oral findings and, in doing so, stated: "This is taken from an examination of all the exhibits, including the tax returns,

the W-2 forms, the deductions that were taken, and what cash flow is represented by the exhibits and the evidence, to get to a net figure." He found that petitioner's net salary is $40,600 per year; that his housing costs at the time of the divorce were $654 per month and are now $1,115 per month; that respondent has earned between $3,600 and $6,000 in some years; that her housing costs are $525 per month; and that her health does not prevent her employment. The trial court ordered that maintenance be reduced to $8,100 per year and that such maintenance shall not be further reduced unless respondent's earnings through employment or otherwise exceed $7,200 gross per year. A judgment order was entered, respondent appealed, and petitioner cross-appealed.

OPINION

### *Respondent's Appeal*

Respondent first contends maintenance was improperly reduced. Modification of maintenance is governed by section 510 of the Illinois Marriage and Dissolution of Marriage Act, which provides in pertinent part:

"(a) * * * the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to the filing of the motion for modification with due notice by the moving party and only upon a showing of a substantial change in circumstances." Ill. Rev. Stat. 1977, ch. 40, par. 510(a).

Respondent argues that the evidence did not reveal a "substantial change in circumstances" which would warrant reducing maintenance. We agree. In this regard, we note petitioner testified that his gross salary at the time of the divorce was $35,000 and is now $50,000; that in 1977, he also received $2,431 in interest income and $2,365 in dividend income and that his adjusted gross income before taxes was $42,619; that at the time of the divorce, he was vice-president of his father's engineering firm and is now president as well as owner of 54% of the stock; that he owns, in joint tenancy with his present wife, a condominium with a $66,000 mortgage but with a market value (according to Kubbe) of between $175,000 and $180,000; and that the Colorado property was purchased for $150,000.

Respondent, on the other hand, testified that she earned approximately $1,000 in 1974, $1,500 in 1975, between $3,200 and $3,500 in 1976, $600 in 1977, and $700 in 1978. She also testified that she unsuccessfully applied for employment in 50 places since 1976 and that she had monthly expenses approximating $950. Further, she stated that she owed $2,500 in miscellaneous debts and $8,000 on a promissory note payable to her mother; that she was hospitalized in 1972 because of her

hypoglycemia; that a heart problem was diagnosed in 1976; and that in 1978 she suffered from trembling, Bell's Palsy, and esophagus difficulties. Thus, while petitioner's financial position appears to have improved since the divorce, it appears that respondent has never earned more than $3,500 in any given year, and that her monthly expenses exceeded her maintenance. Further, her testimony concerning her health and as to her ability to maintain employment was uncontroverted.

In the light of the foregoing, we see nothing in the record of a "substantial change in circumstances" which would warrant the reduction in maintenance and conclude that the trial court erred in so ordering.

Respondent next contends that the trial court improperly relied upon petitioner's pro forma tax returns in reaching its decision after it had ruled them inadmissible. We note that, in delivering its oral findings, the court stated:

> "This is taken from an examination of all the exhibits, including the tax returns, the W-2 forms, the deductions that were taken, and what cash flow is represented by the exhibits and the evidence, to get a net figure."

It is not clear whether the trial court reached "a net figure" by using the tax returns, which would have been improper as they were not in evidence, or whether it relied on the refreshed recollection testimony of petitioner. In any event, since we found that the reduction of maintenance was improper, we need not further consider this contention.

### Petitioner's Cross-appeal

In his cross-appeal, petitioner argues the trial court erred in merely granting a reduction in maintenance and that, under the evidence, it properly should have terminated maintenance completely. In light of our holding above that even a reduction in payments was unwarranted, this argument is rejected.

For the reasons stated above, the order of the trial court reducing maintenance is reversed, and this matter is remanded with directions to reinstate.

Reversed and remanded, with directions.

LORENZ and WILSON, JJ., concur.